IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Joann Liu, on behalf of herself and others similarly situated,** ) | |
| Plaintiff, ) | |
| ) | No. 21 C 2919 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| **MRS BPO, LLC,** ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court finds that it lacks subject-matter jurisdiction and therefore directs the Clerk to remand the case to the Circuit Court of Cook County forthwith. Civil case terminated.

## STATEMENT

Plaintiff, on behalf of herself and others similarly situated, filed suit in state court alleging that Defendant caused a letter vendor to send Plaintiff debt-collection letters. According to Plaintiff, when Defendant provided Plaintiff's private information, including her name and address; her status as a debtor; details of her alleged debt; and other personal information to a third-party letter vendor, it violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692c(b). Defendant removed the case to this Court and a week later filed an answer and affirmative defenses, including the following:

> Plaintiff's Complaint does not sufficiently allege that Plaintiff suffered any damage from the alleged violations of the [FDCPA] and, therefore, she is not entitled to any award of damages, attorney fees or costs. That is, Plaintiff may lack standing and this Court may lack subject matter jurisdiction.

(Def.'s Answer, Dkt. # 10, at 11.)

Plaintiff moved to remand to state court, contending that it is inappropriate for Defendant to remove a case and then allege as an affirmative defense a lack of subject-matter jurisdiction due to the absence of Article III standing, namely, an injury in fact. Defendant disagreed. The burden is on Defendant, the removing party, to establish standing. *See Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1151 (7th Cir. 2020) (in the removal setting, "*the defendant*, as the proponent of federal jurisdiction, must establish the plaintiff's Article III standing") (emphasis in original). Thus, the Court denied without prejudice Plaintiff's motion to remand and directed Defendant to file a brief establishing Plaintiff's Article III standing, to which Plaintiff responded.

Under the FDCPA, a plaintiff may recover statutory and actual damages resulting from violations of the Act. *See* 15 U.S.C. § 1692k(a). The Act in part forbids debt collectors from non-consensual "communicat[ions], in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." *Id*. § 1692c(b). To have standing under Article III, a plaintiff must show: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). At the pleading stage, a plaintiff must clearly allege facts demonstrating each of these elements. *Id*. As Plaintiff does not allege any tangible harm, such as monetary losses from the alleged transmission of her information to a letter vendor, the question currently before the Court is whether Plaintiff has clearly alleged facts demonstrating a concrete injury in fact.

The Supreme Court has recognized that "[v]arious intangible harms can . . . be concrete," including "reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion,* 141 S. Ct. at 2205. "In determining whether an intangible harm constitutes injury in fact, . . . it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

In a series of opinions, the Eleventh Circuit recently addressed the exact claim at issue in this case – whether providing a plaintiff's private information to a letter vendor gives rise to a concrete injury in fact for Article III standing. In *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.,* 994 F.3d 1341 (11th Cir.) ("Hunstein I"), *opinion vacated and superseded on reh'g,* 17 F.4th 1016, 2021 WL 4998980 (11th Cir.) ("Hunstein II"), *reh'g en banc granted, opinion vacated,* 17 F.4th 1103 (11th Cir. 2021), the Eleventh Circuit found that the plaintiff had standing.[1] *Id*. at 1347; *see also Liu v. Radius Global Sols., LLC*, No. 21 C 2895, 2021 WL 4167585, at *2 (N.D. Ill. Sept. 14, 2021) (relying on *Hunstein I*); *Keller v. Northstar Location Servs.*, No. 21 C 3389, 2021 WL 3709183, at *2 (N.D. Ill. Aug. 20, 2021) (same); *Thomas v. Unifin, Inc.*, No. 21 CV 3037, 2021 WL 3709184, at *1 (N.D. Ill. Aug. 20, 2021) (same). In finding that the harm was concrete, the *Hunstein I* court noted that "[f]or more than a century, invasions of personal privacy have been regarded as a valid basis for tort suits in American courts." *Hunstein I,* 994 F.3d at 1347. Specifically, the *Hunstein I* court identified the tort of "public disclosure of private facts," under which "[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Id*. (citing Restatement (Second) of Torts § 652D (Am. L. Inst. 1977)). Given that "Congress identified the 'invasion[ ] of individual privacy' as one of the harms against which the statute is directed," *id*. at 1348 (citation omitted), the *Hunstein I* court concluded that "[a]lthough § 1692c(b) isn't identical in all respects to the invasion-of-privacy tort, we have no difficulty concluding that it bears 'a close relationship to a

---

[1] As noted, the Eleventh Circuit issued a superseding opinion on rehearing and has since granted the petition for rehearing en banc, vacating the superseding opinion. The Court outlines the holdings in *Hunstein I* and *II* for purposes of background.

2

harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.'" *Id*. at 1347, 1348 (citing *Spokeo*, 578 U.S. at 341).

After the Eleventh Circuit's original opinion in *Hunstein I*, the Supreme Court issued its opinion in *TransUnion*, in which "individuals with OFAC [Office of Foreign Assets Control] alerts [which identified the individuals as potential terrorists] in their credit files sued TransUnion under the Fair Credit Reporting Act for failing to use reasonable procedures to ensure the accuracy of their credit files." *TransUnion,* 141 S. Ct. at 2197. In determining whether two groups of plaintiffs had Article III standing, the Court followed the *Spokeo* instruction to determine whether the harm suffered by the plaintiff was one for which the common law historically provided relief. As to the plaintiffs whose reports were distributed to third-party businesses that had run credit checks, the Court concluded that the plaintiffs had suffered a harm with a "close relationship" to the harm associated with the tort of defamation. The Court's conclusion differed as to the plaintiffs whose information was not transmitted via credit checks to third-party businesses. *Id*. at 2209-10. In part, the Court noted:

> For the first time in this Court, the plaintiffs argue that TransUnion "published" the class members' information internally—for example, to employees within TransUnion and *to the vendors that printed and sent the mailings that the class members received*. That new argument is forfeited. In any event, it is unavailing. Many American courts did not traditionally recognize intra-company disclosures as actionable publications for purposes of the tort of defamation. Nor have they necessarily recognized disclosures to printing vendors as actionable publications.

*TransUnion,* 141 S. Ct. at 2210 n.6 (internal citations omitted and emphasis added).[2] Thus, the Court indicated in dicta that disclosing personal information to vendors that printed and sent mailings to class members was not publication for purposes of defamation and therefore "d[id] not bear a sufficiently 'close relationship' to the traditional defamation tort to qualify for Article III standing." *Id*.

The decision in *Hunstein I* analogized the facts before it not to defamation, as *TransUnion* did, but to public disclosure of private facts, which the Restatement (Second) of Torts refers to as publicity given to private life. *See* Restatement (Second) of Torts, § 652D. The Restatement (Second) states that while defamation requires publication, which includes *any* communication to a third person, publicity given to private life requires publicity, which "means

---

[2] The Court cited *Mack v. Delta Air Lines, Inc.*, 639 F. App'x 582 (11th Cir. 2016), which, like *Hunstein*, is an Eleventh Circuit case, in support of its contention that courts have not "necessarily recognized disclosures to printing vendors as actionable publications." In *Mack*, the Eleventh Circuit concluded that "[n]either the alleged communication to Delta's top management and lawyer nor the communication to a third-party printer constituted 'publication' for purposes of stating a claim for libel under Georgia law." *Id*. at 586. And if communication to a third-party printer is not publication, which requires disclosure to only one other person, it is hard to see how it could be publicity, which requires communicating the offending information to the public at large or so broadly as to make public knowledge substantially certain.

that the matter is made public*, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.*" *Id*. cmt. a. (emphasis added). The Restatement (Second) goes on to state:

> [t]he difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public. Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.

*Id*.

As previously noted, based in part on the *TransUnion* ruling, the Eleventh Circuit vacated its original ruling in *Hunstein I* and issued a superseding one. *Hunstein II*, 17 F.4th 1016, 2021 WL 4998980, at *1. In *Hunstein II*, the majority stood by its holding that the plaintiffs had alleged a concrete injury in fact, noting that *TransUnion* "swore off" any contention that "*Spokeo*'s close-relationship criterion requires that a plaintiff's asserted harm to be an 'exact duplicate' of a common-law cause of action." *Id*. at *9 (citation omitted). Instead, the majority in *Hunstein II* found compelling the lines of cases which have held that "a plaintiff need only show that his alleged injury is similar in *kind* to the harm addressed by a common-law cause of action, not that it is similar in *degree.*" *Id.* at **5-7 (emphasis in original and collecting cases). The majority concluded that "[b]ecause (1) § 1692c(b) bears a close relationship to a harm that American courts have long recognized as cognizable and (2) Congress's judgment indicates that violations of § 1692c(b) constitute a concrete injury, . . . Hunstein has the requisite standing to sue." *Id*. at *12.

The dissenting judge, however, rejected the majority's analysis, finding that there was no publicity as required by the common-law tort of publicity given to private life because the plaintiff had alleged only that the information was communicated to a third-party mailing vendor. *Id.* at *19 (Tjoflat, J., dissenting) ("[C]ommunication could lead to publicity if the communication was to a large group of people, such as to be public. But communication can also be private, and just because it could be public does not mean that it actually was public."). In addition, the dissent disagreed with the majority's conclusion that Congress, in enacting the FDCPA, intended to prohibit *all* transmissions of information to third parties, noting, for example, that other sections of the FDCPA implicitly allow such transmissions. *Id*. at *22 (Tjoflat, J., dissenting) ("It seems odd that Congress would hamper the very process it codifies in § 1692g, writing debtors about their debt, by banning the use of mail vendors, who simply send out the written notices about debt, under the language of § 1692c(b)."). The dissent summarized its position as follows:

> *TransUnion* stands for the proposition that the *Spokeo* analysis for intangible harms based on the violation of a statute—that is, looking at history and the judgment of Congress—is individualized for every plaintiff's injury. Just because some plaintiffs' injuries will have a common-law analogue and are the very kind of injuries Congress was trying to prevent does not mean that other plaintiffs, who

4

> allege a violation of the very same statute, will get a golden ticket to standing without also satisfying what *Spokeo* requires.

*Id*. at *17 (Tjoflat, J., dissenting). The Eleventh Circuit recently granted rehearing en banc and vacated *Hunstein II*.

Although *Hunstein II* has been vacated, the Court finds the dissent's reasoning persuasive. Applying the definition of publicity to the allegations at issue, the Court concludes that no publicity has occurred -- only communication with a mailing vendor. Just as *TransUnion* opined that a claim without publication would lack a close relationship to defamation, without publicity, Plaintiff's claim does not have a close relationship to the claim of publicity given to private life. Moreover, "simple transmission of information along a chain that involves one extra link because a company uses a mail vendor to send out the letters about debt is not a harm at which Congress was aiming." *Id*. at *23 (Tjoflat, J., dissenting). Accordingly, the Court concludes that Plaintiff has not alleged facts sufficient to confer Article III standing. *See Shields v. Prof'l Bureau of Collections of Md., Inc*., No. 20CV02205HLTGEB, 2021 WL 4806383 (D. Kan. Oct. 14, 2021) (finding no standing because "Plaintiff d[id] not allege that anyone has read her information rather than merely processed it, *see TransUnion*, 141 S. Ct. at 2210 n.6, or that there[] [had] otherwise been publicity," nor had she alleged that disclosure of student-loan debt was highly offensive to a reasonable person as is required for the common-law claim of publicity given to private life); *In re FDCPA Mailing Vendor Cases*, Nos. 21-2312, 21-2587, 21-3002, 21-3383, 21-3434 & 21-3462, --- F. Supp. 3d ---, 2021 WL 3160794 (E.D.N.Y. July 23, 2021) (noting *TransUnion*'s dicta that courts have not necessarily recognized disclosures to printing vendors as publication and finding that this "language appears dispositive of the mailing vendor theory," and concluding that "it would be difficult to suggest, using the 'invasion of privacy' analysis adopted in *Hunstein*, that communication of purported non-payment of a relatively *de minimis* debt to a mailing vendor constitutes a 'matter publicized . . . of a kind that . . . would be highly offensive to a reasonable person.'").

Because Defendant has not met its burden of establishing Plaintiff's Article III standing, removal was improper. The Clerk is directed to remand the case to the Circuit Court of Cook County forthwith.

**Date**:  December 30, 2021

**Ronald A. Guzmán**
**United States District Judge**

5